UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICKY MCGEE, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil No. 15-11498-LTS |
| SEAN MEDEIROS, | ) ) ) | |
| Respondent. | ) ) | |

MEMORANDUM AND ORDER ON MOTION TO DISMISS (DOC. NO. 18)

March 2, 2016

SOROKIN, J.

    Petitioner Ricky McGee ("McGee") has filed a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he advances one challenge to his conviction. Doc. No. 1. Respondent Sean Medeiros ("Medeiros") has moved to dismiss the petition for failure to exhaust state remedies or, alternatively, for failure to state a claim meriting relief. Doc. No. 18. For the reasons that follow, Medeiros's motion is ALLOWED, and the petition is DISMISSED.

I.    BACKGROUND

    A.    Facts

    The Court relies on the recitation of facts from the Supreme Judicial Court of Massachusetts ("SJC"). See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.").

Sometime between 2:16 a.m. and 2:40 a.m. on April 16, 1997, the victim, a store clerk at a convenience store in the Fenway section of Boston, was shot in the back of the head with a .38 caliber revolver.  The victim, who was still alive at that point, was discovered by one of his friends, who telephoned 911; the victim died later that day as a result of the gunshot wound.  The robber took food stamps, a cash tray that held less than ninety-four dollars in cash, and a coin compartment from the cash register. A few hours after the robbery, police found the cash tray, a single leather glove, and a coin in an alley located next to the convenience store that leads to a parking area behind some apartment buildings.  The glove and coin were found on a ledge at the edge of the parking lot; four to five feet below that ledge is another parking lot from which a small alleyway, not immediately visible, leads to a public street.  Also that day, the owner of a truck that had been parked in the lot near the alleyway found a coin compartment in the truck bed and contacted police.

	The defendant lived with his mother, her three other children, and a family friend, Natasha Hamilton, in an apartment a few blocks from the convenience store.  Testimony at trial indicated that only a person familiar with the area would know that the defendant's apartment building could be reached by proceeding from the convenience store down the alley to the parking lot and from there through the small alleyway to the street.

	At about 1:45 a.m. on April 16, the defendant, his mother, and Hamilton returned to the apartment from a pizza shop.  The defendant's mother went to bed, but Hamilton stayed up to watch television.  At about 2:00 a.m. Hamilton saw the defendant leave the apartment wearing a black "skully" cap on his head, a ski mask around his neck, a black pullover, dark fatigue pants, and black boots; he also carried dark brown, almost black gloves in his pocket.  When he returned approximately fifteen to twenty minutes later, the defendant was wearing only one glove.  The defendant appeared to Hamilton to be nervous; his face was sweating and his voice seemed "scared."  He told Hamilton that he had "shot the man" who worked at the convenience store, describing him as "the short guy with the curly hair" who is "always smiling."  The defendant said he had gone to the convenience store to rob it and had told the clerk to lie down on the floor; when the man reached for something, the defendant shot him in the back of his head.  Hamilton observed the defendant take money and food stamps from his pocket and sort them into two piles on a coffee table; the defendant also put some coins on the table.  The defendant then pulled a black gun from his waist, and emptied the bullets from it.

	. . . .

	The store's security cameras were not functioning on the night of the robbery, and the only physical evidence recovered from the crime scene was two bullet fragments.  Hamilton was aware that the store had offered a $25,000 reward for information leading to apprehension and conviction of the shooter.  The defendant was arrested almost three months later, when Hamilton informed police that, on the evening of the shooting, the defendant had confessed to her.

Commonwealth v. McGee, 4 N.E.3d 256, 259-60 (Mass. 2014) (internal footnotes omitted).

Hamilton testified at trial. Id. at 266. McGee, alleging that she was paid for her testimony, sought an instruction from the trial court regarding bias from cooperating witnesses. Id. The specific instruction he sought read:

> The testimony of a cooperating witness who provides evidence against a Defendant to escape punishment or receive leniency from law enforcement authorities for his or her own misdeeds or crimes, or for other personal reason or advantage, must be examined and weighed by the jury with greater care and caution that the testimony of an ordinary witness.
>
> You, the jury, must determine whether a cooperating witness's testimony has been affected by self-interest, or by an agreement, implicit or explicit, he or she has with the government, or his own interest in the outcome of the case, or by prejudice or bias against the Defendant and his family.

Id. at 267 (internal quotation marks omitted). McGee's petition references the $25,000 award from the store as Hamilton's sole financial incentive. Doc. No. 1 at 5.[1]

Instead of giving that specific instruction, "the judge instructed the jury that they should consider whether a witness 'had a bias or motive which would have influenced [his or her] testimony'; 'has any interest in the trial or any interest in its outcome' or 'has been influenced by any promises, rewards or any other inducements to testify.'" McGee, 4 N.E.3d at 267. Additionally, McGee's "counsel cross-examined Hamilton about these inducements, and argued forcefully in closing that Hamilton was motivated to lie by money and revenge. He argued that

---

[1] McGee raised additional financial incentives for Hamilton before the SJC. McGee, 4 N.E.3d at 266-67 ("When Hamilton came forward with information that the defendant had confessed his role in the shooting to her, the prosecutor agreed to pay the cost of hotel accommodation for her and her children. The prosecutor also assisted Hamilton in obtaining a 'Section 8' housing certificate. When an apartment was located, the prosecutor paid Hamilton's first month's rent, the security deposit, and a broker's fee. The total cost of this assistance was nearly $4,000."). Because McGee does not raise these incentives in his petition, the Court does not address them in its analysis.

Hamilton 'is a witness who was bought and paid for by the Commonwealth.  She is a witness who had motive to lie, she is a witness who was well rewarded for her lies.'"  Id.

      B.      Procedural History

A Superior Court jury convicted McGee of first-degree murder on October 20, 1998.  Id. at 259.  He subsequently appealed his conviction and filed two motions for a new trial, a motion for reconsideration, and a request for posttrial discovery, all of which the trial court denied.  Id.  The SJC consolidated these appeals, id., and affirmed his conviction on February 12, 2014.  Id. at 256, 270.  In affirming his conviction, the SJC considered and rejected McGee's challenged to the trial court's failure to deliver his cooperation instruction.  See id. at 267 ("The defendant was not entitled to a specific instruction that the jury should exercise special care and caution in evaluating Hamilton's testimony.").  McGee filed a petition for rehearing on February 26, 2014, see Doc. No. 19-6, and the SJC denied it on April 4, 2014.  Doc. No. 19-2 at 5.

McGee filed this Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, on April 2, 2015.  Doc. No. 1.  The petition raised one ground for relief: that McGee's "Due Process rights were violated when the trial court failed to specifically instruct the jury that the Commonwealth's key witness had a financial incentive contingent on the defendant's conviction."  Id. at 5.  He submitted a Memorandum of Law supporting his petition the same day.  Doc. No. 2.  The memorandum proffered a second Due Process Clause violation: the SJC's "hold[ing] that the petitioner was 'not entitled' to the requested instruction despite the Court being required to apply it to a petitioner's direct appeal under Griffith v. Kentucky."  Id. at 5.[2]

---

[2] In Griffith v. Kentucky, 479 U.S. 314, 328 (1987), the Supreme Court held "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exceptions for cases in which the new rule constitutes a 'clear break' with the past."

On July 10, 2015, Medeiros filed a Motion to Dismiss.  Doc. No. 18.  The motion raised two grounds for dismissal: McGee's failure to both exhaust state remedies and state a claim for which relief may be granted.  Id. at 1.  McGee, relying primarily on his earlier memorandum, responded to the motion on August 28, 2015.  See Doc. No. 24.

II.     DISCUSSION

Because "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," § 2254(b)(2), the Court first addresses whether McGee has stated a meritorious claim.

   A.     Legal Standard

Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  As the Supreme Court repeatedly has emphasized, this substantially deferential standard is "difficult to meet," with the petitioner carrying a heavy burden of proof.  Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  The state court is not required to cite, or even

5

have awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 562 U.S. at 100 (stating "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

For a habeas petitioner to prevail under this exacting standard, the state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court. Williams, 529 U.S. at 404-05. The Supreme Court has "repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1). Glebe v. Frost, 135 S. Ct. 429, 431 (2014); see also, e.g., Lopez v. Smith, 135 S. Ct. 1, 4 (2014) (warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced" (internal quotation and citation omitted)).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles, 556 U.S. at 122. "The more general the rule, the more leeway

courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

B.    Cooperating Witness Instruction

The one claim for relief McGee raises in his petition is that the trial court's failure to give the requested instruction regarding Hamilton's bias as a cooperating witness violated McGee's due process rights. Because "there is a 'decision resolving the parties' claims, with res judicata effect, that is based on the substantce of the cliam advanced, rather than on a procedural, or other, ground,'" the SJC has adjudicated this issue on the merits. Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) (quoting Teti v. Bender, 507 F.3d 50, 56-57 (1st Cir. 2007)). The Court accordingly applies the deferential § 2254(d) standard.

Even within § 2254(d)'s imposing standard, obtaining habeas relief for improper jury instructions is particularly challenging. See Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982) ("As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief."); accord Dudley v. Ryan, 62 F. Supp. 3d 193, 197 (D. Mass. 2014). McGee faces an even steeper burden still since "[a]n omission, or an incomplete instruction, is less likely to be

prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977); accord Dudley, 62 F. Supp. 3d at 197 ("In a case such as this, where the petitioner's claim is based on the failure to give a jury instruction, meeting the habeas standard is even more difficult."). In these cases, "habeas relief is appropriate where the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Dudley, 62 F. Supp. 3d at 197. The Court makes this determination "in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991). It does not evaluate the instruction "in artificial isolation." Cupp v. Naughten, 414 U.S. 141, 147 (1973).

McGee cannot meet his burden. As the SJC astutely observed, not only did McGee's counsel subject Hamilton to a vigorous cross-examination, but "the judge instructed the jury that they should consider whether a witness 'had a bias or motive which would have influenced [his or her] testimony'; 'has any interest in the trial or any interest in its outcome' or 'has been influenced by any promises, rewards or any other inducements to testify.'" McGee, 4 N.E.3d at 267. In this scenario, the jury undoubtedly was alerted to factors which potentially undermined Hamilton's credibility. And this awareness minimized—if not eliminated entirely—the risk of prejudice McGee faced from his requested instruction's absence. See id. ("The judge's general instructions adequately conveyed to the jury how they were to evaluate witness credibility, particularly in light of the fact that 'defense counsel vigorously cross-examined [the witness] and vigorously argued to [the] jury her lack of credibility.'") (quoting Commonwealth v. Daye, 587 N.E.2d 194, 206 (Mass. 1992)) (alterations in original).

When viewed in this context, McGee's failure to point to any Supreme Court decision to which the SJC's decision rejecting error in the failure to give the requested jury instruction is contrary to or an unreasonable application of is not surprising. While McGee's memorandum

does cite multiple authorities in support of its argument for the cooperating witness instruction, see Doc. No. 2 at 12-14 (citing, inter alia, Commonwealth v. Luna, 571 N.E.2d 603 (Mass. 1991); Commonwealth v. Miranda, 934 N.E.2d 222 (Mass. 2010); and United States v. Levenite, 277 F.3d 454, 462 (4th Cir. 2002)), none of them are Supreme Court cases. As such, they cannot aid McGee in meeting his burden under § 2254(d). Thus, the Court finds this claim meritless.[3]

## IV. CONCLUSION

For the foregoing reasons, McGee's habeas petition is DENIED, and Medeiros's motion to dismiss is ALLOWED.[4]

---

[3] McGee's failure to raise the Griffith claim in his petition precludes the Court from granting relief on that basis. See Sullivan v. Saba, C.A. No. 10-cv-30194-MAP, 2012 WL 1409530, at *2 (D. Mass. Apr. 20, 2012) ("Furthermore, '[i]t is the petition for a writ of habeas corpus, not subsequently file memorandum, which defines the claim for habeas relief.'") (quoting Smiley v. Maloney, No. 01-11648-GAO, 2003 WL 23327540, at *16 n. 39 (D. Mass. Oct. 31, 2003)).

Were the Court to overlook this procedural bar, McGee would face substantive problems as well. The First Circuit "ha[s] read [Griffith] as establishing that '[i]f [a] conviction is not yet final when the Supreme Court announces [a] rule, then inferior courts must apply that rule to the defendant's case.'" Foxworth v. St. Amand, 570 F.3d 414, 431 (1st Cir. 2009) (quoting Derman v. United States, 298 F.3d 34, 39 (1st Cir. 2002)) (emphasis added). While the First Circuit's gloss on Griffith is not, itself, relevant for habeas purposes, it does underscore that Griffith limited its precise holding to decisions from the Supreme Court announcing new constitutional rules. See Griffith, 479 U.S. at 324 (referencing, on multiple occasions, "decisions of this Court") (emphasis added).

McGee points to no Supreme Court case entitling him to the instruction he requested; rather, he relies on prior SJC case law arguably interpreting the United States Constitution. Any potential failure by the SJC to retroactively apply such cases decided after McGee's conviction, but while his direct appeal was pending, thus was not contrary to Griffith. It is also not an unreasonable application of Griffith; to extend Griffith in this manner would render non-Supreme Court decisions binding and enforceable in § 2254 proceedings. To the extent McGee is arguing that Griffith creates a federal due process right, enforceable in a § 2254 proceeding, requiring state courts to apply prior state court precedent to subsequent cases, such an argument is neither within the scope of Griffith, nor has McGee established either the basis for applying any such rule in this case or that the failure to abide by such a rule caused him prejudice.

[4] Because "reasonable jurists," as more thoroughly explained above, could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge